

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00054-CR

_____

JOSEPH EMMANUEL WATKINS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 13th District Court
Navarro County, Texas
Trial Court No. D34763CR

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

In Navarro County, Texas,[1] Joseph Emmanuel Watkins was found guilty of theft by deception of more than $1,500 but less than $20,000 and sentenced to seven years' confinement.[2] On appeal, Watkins contends that the evidence was legally insufficient to support his conviction. Finding the evidence legally sufficient to support the jury's verdict, we affirm the trial court's judgment.

## I.     Factual Background

On January 18, 2012, Joseph Watkins purchased a black 1994 Mercedes from a used-car dealership. He paid $1,000 down, and if he paid the balance of $2,318 before February 28, 2012, he would receive the title, or he could pay an increased balance of $4,318 at $400 per month. Watkins never made any further payments. Despite several attempts to contact Watkins, the dealership never heard from him again.

Less than a month later, Watkins sold the vehicle to Tammy McKoegh. She paid him $1,995 via a cashier's check, which Watkins immediately endorsed and cashed, and she agreed to pay him an additional $1,000 upon delivery of the title and license plates. On or about February 24, 2012, Watkins gave her the license plates, and she paid him the remaining $1,000 owed even though he failed to provide her with the title. There was no written purchase agreement detailing the terms of the transaction.

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Watkins was also assessed courts costs of $249 and ordered to pay restitution to the victim in the amount of $2,995.

At the time of the purchase, McKeogh knew that Watkins had recently purchased the vehicle and that it still had temporary, paper license plates, but she was under the impression that he had proper title to the vehicle. McKeogh testified that Watkins failed to inform her that he still owed money on the vehicle and that he had failed to make any payments beyond the initial down payment. He never gave her the title. McKeogh's son, Aaron Cooper, testified that after McKeogh purchased the vehicle from Watkins, Watkins admitted to him that he still owed money on the vehicle, but asked him not to tell her about it because he would use McKeogh's purchase money to pay off the remaining balance.

McKeogh first learned of the dealership's lien and that Watkins still owed money on the vehicle when the dealership repossessed it in April 2012. During the repossession, Watkins refused to explain the situation to her and refused to answer any of her later calls, so she took the matter to the police. After a warrant was issued for Watkins' arrest and several attempts had been made to serve the warrant at the home of Watkins' mother, he contacted Detective Jessica Abbe of the Corsicana Police Department about the matter. Upon learning the reason for the warrant, he offered to come to the police station and give the money back to McKeogh. Watkins did not appear for the July 18, 2012, meeting and was not found and arrested until December 2012.

Watkins was indicted for theft by deception of more than $1,500, but less than $20,000. Watkins did not testify at trial. The jury found him guilty as charged, and after pleading true to the State's enhancement allegations, he was sentenced to seven years' imprisonment.

3

## A. Watkins' Conviction Was Supported By Legally Sufficient Evidence

In his sole point of error, Watkins contends that the evidence is legally insufficient to support his conviction because the "State failed to establish beyond a reasonable doubt that [his] deception induced [McKeogh] to part with her money or that he intended to deprive [her] of the property at the time of the exchange."

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict

4

the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2016). Appropriate means "to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(B) (West Supp. 2016). An intent to deprive an owner of his property means an intent "to withhold the property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." TEX. PENAL CODE ANN. § 31.01(2)(A) (West Supp. 2016). Appropriation of property is unlawful if it "is without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03(b)(1) (West Supp. 2016).

The indictment states, in pertinent part, that Watkins:

[O]n or about the 1st day of February, A.D. 2012, and before the making and filing of this complaint, in the County of Navarro and State of Texas, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over property, to-wit: courrency [sic] of the United States of America, of the value of $1500 or more but less than $20,000 from Tammy McKeogh, the owner thereof, without the effective consent of the owner, namely, by deception, and with intent to deprive the owner of the property.

In making an analysis under the hypothetically correct jury charge, the State was required to prove that: (1) Watkins (2) on or about February 1, 2012, (3) in Navarro County, Texas, (4) unlawfully appropriated, by acquiring or exercising control over U.S. currency, (5) having a value of $1,500 or more, but less than $20,000, (6) from McKeogh (7) by deception and (8) with the intent to deprive McKeogh of the property. Here, Watkins only argues that the State failed to sufficiently

5

prove that his deception induced the transaction and that he intended to deprive her of the money at the time of the exchange.

### 1. Inducement by Deception

The indictment alleged that Watkins committed theft of money "by deception" by acquiring money from McKeogh without her effective consent. Consent is not effective if it is induced by deception. TEX. PENAL CODE ANN. § 31.01(3)(A) (West Supp. 2016). When a defendant is charged with theft by way of deception, the State is bound to prove deception. *Fernandez v. State*, 479 S.W.3d 835, 838 (Tex. Crim. App. 2016). To prove theft by deception, the State must show that the owner of the misappropriated property was induced to consent to its transfer because of a deceptive act of the defendant. *Id.* (citing *Daugherty v. State*, 387 S.W.3d 654, 659 (Tex. Crim. App. 2013)). "That is, the defendant's deceptive act must impact the judgment of the property owner in the transaction." *Id.*

Texas law defines deception as, *inter alia*:

> (B)  failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
>
> . . . .
>
> (D)  selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record.

TEX. PENAL CODE ANN. § 31.01(1)(B), (D) (West Supp. 2016). By failing to correct a false impression, silence itself may constitute a deceptive act. *See Fernandez*, 479 S.W.3d at 839.

6

Here, the evidence was undisputed that the vehicle was encumbered by a lien at the time Watkins sold it to McKeogh. McKeogh testified that Watkins never informed her of the lien or that he had ceased making payments on the vehicle. McKeogh was under the impression that Watkins held title to the vehicle, as Watkins had agreed to give her the title and license plates when McKeogh made her final payment to him. When she made her final payment to Watkins, he gave her the license plates, but failed to give her the title.

Viewing the evidence in the light most favorable to the verdict, a reasonable jury could have inferred that Watkins deceived McKeogh by selling her the vehicle without disclosing the lien, that he created or confirmed her false impression that he held title to the vehicle by agreeing to deliver the title in the future, and that he failed to correct that false impression. *See* TEX. PENAL CODE ANN. § 31.01(1)(B), (D); *see Fernandez*, 479 S.W.3d at 839. The jury was free to infer her reliance on Watkins' deception from the fact that she expected Watkins to provide her with the vehicle's title upon her final payment to him, even though she eventually made such payment without receiving the title. *See Daugherty v. State*, 387 S.W.3d 654, 659 n.18 (Tex. Crim. App. 2013) (victim's reliance must be substantial or material factor in the victim's decision-making process).

### 2.    Intent to Deprive

The State had to show that Watkins intended to unlawfully deprive the victim of her money at the time of the exchange. *See Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012). The State was required to prove that Appellant had no intention of fulfilling his obligations under the contract. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In determining intent, the

7

jury may consider events and circumstances occurring before, during, and after the offense, as well as any of the defendant's actions which show an understanding and common design to commit the prohibited act. *See Wirth*, 361 S.W.3d at 697. A jury may also take into consideration deception occurring after the offense and whether the offense resulted in the defendant's personal gain. *Christensen v. State*, 240 S.W.3d 25, 32, 35 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Watkins obtained the vehicle by making a down payment, but then he failed to make any further payments, and less than a month later, he sold the vehicle to McKeogh for several hundred dollars less than what he owed on it, without informing her that it was subject to a lien. Having paid only $1,000 to the dealership and receiving $2,995 from McKeogh, Watkins profited by $1,995. There was testimony that after receiving the final payment from McKeogh, he took a three-day trip to South Padre Island and purchased a truck. Cooper testified that Watkins admitted to him that he still owed money on the vehicle, but he asked him not to tell his mother about it because he would use McKeogh's purchase money to pay off the remaining balance. After failing to make payments on the car, he refused to have contact with the dealership, and after the vehicle was repossessed and McKeogh demanded an explanation, he refused to answer her telephone calls. He contacted the police only after the police began attempting to serve him with an arrest warrant, and when he arranged to meet with the police and repay McKeogh's money, he did not appear.

Watkins obtained the Mercedes from the car dealer, but failed to make a single payment on it. He then personally profited by quickly selling the vehicle for less than what was owed on it, and he attempted to cover up the fact that he did not have title before accepting McKeogh's final payment and using the funds to take a vacation. Viewing that evidence in the light most

8

favorable to the verdict, the jury could have reasonably inferred that at the time of the transaction, Watkins had no intention of fulfilling the agreement he made with McKeogh, and therefore unlawfully deprived her of her money. *See Wirth*, 361 S.W.3d at 697; *Guevara*, 152 S.W.3d at 50. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     November 7, 2016
Date Decided:       December 21, 2016

Do Not Publish