**AFFIRM; and Opinion Filed March 27, 2019.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00133-CR

**ESTEBAN GARCIA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-83445-2016**

## MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Molberg

A jury convicted Esteban Garcia of illegal dumping in violation of the Texas Litter

Abatement Act, Tex. Health & Safety Code Ann. §§ 365.001–.035 (the TLAA). The trial

court assessed punishment of two years' confinement in a state jail facility, suspended imposition

of the sentence, and placed Garcia on community supervision for two years. In one point of error,

Garcia argues the evidence is insufficient to support the conviction. We affirm the trial court's

judgment.

**Background**

On April 26, 2016, Charles Sibley, an environmental crimes investigator for the Collin

County Sheriff's Office, was on patrol near Garcia's property at 248 FM 547. Sibley testified

there is a "brick home with a yard" on Garcia's property and there are houses on each side of the

property. Sibley saw a "large amount of waste fence panels," seven "lead acid batteries," and two car engines "thrown everywhere" in the yard of Garcia's property. In Sibley's opinion, these items were "litter" or "solid waste." Garcia's property is not an approved waste disposal site.

According to Sibley, fence panels such as the ones on Garcia's property are removed in sections when a new fence is installed and the removed panels are "considered a waste product of the fencing industry." Sibley testified there were over 100 fence panels on the property. Sibley took a number of photographs of Garcia's property.[1] As relevant to this appeal, the photographs depicted piles of fence panels and scrap wood.[2]



---

[1] Several of these photographs are set out below.

[2] Because Garcia's conviction may be affirmed based on the disposal of the fence panels and scrap wood on his property, we need not address the lead acid batteries or the car engines observed by Sibley. *See* TEX. R. APP. P. 47.1.







Sibley did not weigh the fence panels on Garcia's property, but had previously weighed similar fence panels. Based on his experience, Sibley believed the approximate weight of each panel was sixty pounds. In Sibley's opinion, the fence panels on Garcia's property weighed over 200 pounds.

Sibley spoke with Garcia, who indicated the fence panels were from his fencing business. Garcia told Sibley that he brought the fence panels and other wood to the property in order to sell the usable wood. Sibley testified salvaging the usable wood for resale would be a "commercial purpose."

Garcia also told Sibley the material had accumulated to the point that it was too much waste for him to haul off, and his wife was upset with him for "making such a mess." Garcia agreed to clean up the yard within thirty days. Sibley drove by Garcia's property on May 7, 2016, and noted the property had not been cleaned up and it looked as if more material had been brought to the property.

On June 12, 2016, Sibley saw Garcia pull a trailer loaded with waste fence panels onto his property. Sibley asked Garcia why he was bringing the fence panels to the property, and Garcia said that he was in the fencing business. Sibley again told Garcia that he needed to clean up the

property, and Garcia said he would take the fence panels to the landfill the following Monday. Sibley drove past Garcia's property on June 29, 2016, and observed the trailer full of fence panels was still on the property. Further, it appeared none of the original items had been removed and more items had been brought to the property.

Sibley agreed it was not illegal to own new or usable fence panels with the intent to build a fence on your property and that Garcia indicated "on one occasion" that he intended to use the fence panels to build a fence around the property. However, according to Sibley, a "lot" of the panels on Garcia's property were "damaged or rotten" and were scrap wood. Sibley drove by Garcia's property on January 7, 2018, which was the day prior to trial, and noted there were still fence panels and debris "everywhere" on the property. Sibley did not observe that a fence was being constructed on the property.

Stephanie Strickland, an investigator with the Collin County District Attorney's Office, testified she drove by Garcia's property on January 2, 2018. Strickland saw fence panels and other debris on the property, but did not observe a fence being constructed on the property.

Garcia testified he was semi-retired from construction work, and received the fence panels from friends who owned fence companies. Garcia denied telling Sibley that he was planning to resell the wood or that he would clean up the property within thirty days. Garcia did not consider the fence panels to be "litter" or "junk," and intended to use wood from the fence panels to build a fence around his property. This required him to tear apart the fence panels and remove the rotten parts. His progress on the fence was slow because he was doing the work himself. At the time of trial, he had built approximately ten or fifteen feet of fence using wood from the panels. The jury viewed a photograph of the fence Garcia built on the property.

Garcia knew an individual who had been convicted of illegal dumping. He testified he had been unaware of that individual's conduct and denied being in "cahoots with those guys." Sibley

testified Garcia was seen at the illegal dump site standing beside a truck loaded with fence panels. After the illegal dump site was shut down, fence panels started accumulating on Garcia's property. According to Sibley, by seeking to avoid the payment of landfill fees, Garcia was disposing of the fence panels for a "commercial purpose."

The jury found Garcia guilty of illegal dumping. Both Garcia and the State agreed the trial court could view Garcia's property prior to imposing sentence. After viewing the property, the trial court sentenced Garcia to two years' confinement, suspended imposition of the sentence, and placed Garcia on community supervision for two years.

## Standard of Review

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). We consider whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). We must "defer 'to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Zuniga*, 551 S.W.3d at 732 (quoting *Jackson*, 443 U.S. at 319). When there is conflicting evidence, we presume the factfinder resolved the conflict in favor of the verdict and defer to that resolution. *Id.* at 733. We may not substitute our judgment for the factfinder's determinations of credibility. *Jackson*, 443 U.S. at 319; *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) ("An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence.").

"Direct evidence and circumstantial evidence are equally probative," *Zuniga*, 551 SW.3d at 733, and circumstantial evidence alone may be sufficient to establish guilt, *Nisbett*, 552 S.W.3d at 262; *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not

point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Nisbett*, 552 S.W.3d at 262.

**Analysis**

A person commits the offense of illegal dumping if he disposes or allows or permits the disposal of litter or other solid waste at a place that is not an approved solid waste site. TEX. HEALTH & SAFETY CODE ANN. § 365.012(a). The offense is a state jail felony if the litter or solid waste is disposed of for a commercial purpose and weighs 200 pounds or more. *Id.* § 365.012(g)(2). Garcia argues the evidence was insufficient to support his conviction because there was no evidence (1) the items on his property were litter or solid waste, (2) of the weight of the items identified as litter or solid waste, or (3) that he disposed of litter or solid waste for the purpose of economic gain.

Garcia first asserts the TLAA applies only to materials that are "waste," "worn out," "discarded," or "refuse," and there was no evidence the items on his property fell within these categories. The TLAA prohibits the improper disposal of "litter" or "solid waste." *Id.* § 365.012(a). "Litter" includes both decayable waste and nondecayable waste. *Id.* § 365.011(6). Combustible waste materials, including wood, and discarded building or construction materials are "nondecayable waste." *Id.* § 365.011(6)(B)(i), (iii). "Solid waste" includes rubbish and discarded material from commercial operations. *Id.* §§ 361.003(34), (35); 365.011(9) ("solid waste" under TLAA has the meaning assigned by section 361.003 of the Solid Waste Disposal Act). "Rubbish" is "nonputrescible solid waste," including combustible waste materials such as wood. *Id.* § 361.003(31)(A).

Sibley testified the items on Garcia's property included fence panels and scrap wood. According to Sibley, the fence panels were damaged and rotten, were from fences that had been torn down, and constituted a "waste product of the fencing industry." In Sibley's opinion, the

–7–

fence panels were "litter" or "solid waste." The jury also viewed photographs of the type, amount, and condition of the fence panels and scrap wood scattered and piled on Garcia's property. We conclude there was sufficient evidence for a rational juror to find beyond a reasonable doubt that the fence panels and scrap wood on Garcia's property constituted "litter" or "solid waste" as defined by the TLAA.

Garcia next argues there was insufficient evidence of the weight of the litter or solid waste on his property to establish he committed a state jail felony. Under the indictment, the State was required to prove the litter or solid waste on Garcia's property weighed 200 pounds or more. Assuming the jury could not reasonably infer from the photographs alone that there was more than 200 pounds of fence panels on the property, Sibley testified that, in his opinion, the fence panels on Garcia's property weighed over 200 pounds.[3] Sibley also testified there were over 100 fence panels on Garcia's property, and the photographs viewed by the jury corroborated Sibley's testimony as to the number of fence panels on the property. Sibley did not weigh the fence panels on Garcia's property. However, he has weighed similar panels in the past, and the average weight of a panel is sixty pounds. A simple multiplication establishes the fence panels on Garcia's property weighed over 600 pounds. We conclude there was a sufficient evidence for a rational juror to find beyond a reasonable doubt that there was more than 200 pounds of litter or solid waste on Garcia's property.

Finally, Garcia contends there was insufficient evidence he disposed of the litter or solid waste for economic gain. As charged in the indictment, the State was required to prove Garcia disposed of the litter or solid waste for a commercial purpose. *See id.* § 365.012(g)(2). A "commercial purpose" means the "purpose of economic gain." *Id.* § 365.011(3).

---

[3] *See Wilson v. State*, No. 05-17-00776-CR, 2018 WL 6187435, at *5 (Tex. App.—Dallas Nov. 27, 2018, no pet.) (mem. op., not designated for publication) ("[A]n officer's estimate of weight is evidence that the trial court could have considered.").

Garcia testified he intended to use wood from the fence panels to construct a fence around his property. However, both Sibley and Strickland drove by Garcia's property shortly before trial and did not see any fence construction. Further, according to Sibley, Garcia said he intended to sell any usable wood from the fence panels. Finally, Sibley told the jury that Garcia had been seen at another illegal dump site standing by a truck containing fence panels. After that illegal dump site was shut down, fence panels began accumulating on Garcia's property. Sibley testified that either salvaging the fence panels to sell the usable wood or attempting to avoid disposal fees at a licensed waste facility constituted a commercial purpose.

The jury, as the sole judge of the evidence and the credibility of the witnesses, could choose to believe Sibley and Strickland and disbelieve Garcia. *See Zuniga*, 551 S.W.3d at 732. We may not substitute our judgment for that of the jury. *See Nisbett*, 552 S.W.3d at 262. We conclude there was sufficient evidence for a rational juror to find beyond a reasonable doubt that Garcia disposed of litter or solid waste for purpose of economic gain.

We resolve Garcia's point of error against him and affirm the trial court's judgment.

/Ken Molberg/
KEN MOLBERG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

180133F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ESTEBAN GARCIA, Appellant

No. 05-18-00133-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas,
Trial Court Cause No. 366-83445-2016.
Opinion delivered by Justice Molberg,
Justices Whitehill and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of March 2019.